UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GARY FRANKS,** | ) | **CASE NO. 5:11CV701** |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **JUDGE SARA LIOI** |
| vs. | ) | |
| | ) | |
| **VILLAGE OF BOLIVAR, et al.,** | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is a motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) filed by Defendants Village of Bolivar (the "Village") and Rebecca Hubble ("Hubble") (collectively "Defendants"). (Doc. 7.) Plaintiff Gary Franks ("Plaintiff" or "Franks") has filed an opposition brief (Doc. 8) to Defendants' motion, to which Defendants have filed a reply (Doc. 9). In their motion, Defendants seek judgment on four of Plaintiff's claims as well his claim for punitive damages. This matter is ripe for disposition. For the following reasons, the motion is **GRANTED in part** and **DENIED in part**.

I.   BACKGROUND

This case arises out of the employment and subsequent termination of Franks by the Village of Bolivar and its Mayor Rebecca Hubble. Franks had been employed as the Water and Street Superintendent for the Village of Bolivar for 33 years. (Doc. 1-2, Compl. at ¶ 8.) His employment was for a yearly-appointed term, commencing January of each calendar year and ending at the end of the calendar year. (Compl. at ¶ 9.) Franks alleges that, because Defendants had not terminated him or stripped him of his supervisory status by the end of 2010, he was effectively reappointed to his position as Superintendent as of January of 2011. (Compl. at ¶ 17.)

As of February 7, 2011, the Village Council had voted not to appoint Franks as the Superintendent for 2011, and he was terminated soon thereafter, on February 21, 2011.[1] (Compl. at ¶¶ 18 & 21.) Before the date of his termination, Franks alleges that he had continued to perform his duties, and that he was paid at the same rate he had previously been paid as a Superintendent. (Compl at ¶¶ 13-16.)

On March 27, 2011, Franks filed his complaint for relief under 42 U.S.C. § 1983 in the Tuscarawas County Court of Common Pleas. (Doc. 1-2.) Franks asserts five counts in his Complaint for age discrimination, retaliatory discharge, breach of contract, abuse of power and intentional infliction of emotional distress.

On April 8, 2011, Defendants removed the action to this Court. (Doc. 1). On April 30, 2011, Defendants filed an answer to Plaintiff's complaint (Doc. 6) and concurrently filed a Motion for Partial Judgment on the Pleadings (Doc. 7).

## II. LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)).

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pled allegations in the complaint as true and construe those allegations in a light most favorable

---

[1] Defendants maintain that Franks' final appointment terminated on December 31, 2010 and that after the Council's vote not to appoint him as Superintendent on February 7, 2011, he was a regular employee in the Water and Street Department, rather than a Superintendent, until his termination on February 21, 2011. (Doc. 7-1 at 1.) On this record, it is not clear what position he held from January 1, 2011 to February 7, 2011.

2

to the plaintiff. *Erickson v. Pardus,* 551 U.S. 89, 93–94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570(2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (citations omitted). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n. 3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts"). In order to grant either a motion for judgment on the pleadings under Rule 12(c) or a motion to dismiss under 12(b)(6), the court must determine that "the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [it to] relief." *J.H. Routh Packing Co.,* 246 F.3d at 852.

### III.    DISCUSSION

In their motion, Defendants seek judgment on four of Franks' five claims: Count 1, alleging that Defendants unlawfully discriminated against Franks on the basis of his age in violation of Ohio Rev. Code § 4112.02(A); Count 3, alleging that the Village breached an

implied employment contract with Franks; Count 4, alleging abuse of power by Hubble in her individual and official capacities in violation of Ohio Rev. Code § 124.61; and Count 5, alleging that the Village and Hubble, in her official capacity, intentionally inflicted emotional distress on Franks. Additionally, Defendants' motion seeks judgment on Franks' claim for punitive damages as against the Village and Hubble in her official capacity.

### A. Count 1

Count 1 of Franks' complaint alleges his termination was the result of unlawful age discrimination in violation of Ohio Rev. Code § 4112.02. Defendants, relying on *Twombly*, argue that Franks has failed to plead any facts, which if taken as true, would establish that his termination was in any way related to his age or that he was treated any differently from similarly situated individuals.

Ohio Rev. Code § 4112.02(A) provides, in relevant part, as follows:

> It shall be an unlawful discriminatory practice: […] for any employer, because of the […] age […] of any person, to discharge without just cause […] or otherwise to discriminate against that person with respect to […] tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev. Code § 4112.02(A). Further, Ohio Rev. Code § 4112.14 provides that, "No employer shall […] discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job […]." Ohio Rev. Code § 4112.99 authorizes civil actions for any violations of Chapter 4112.

The Ohio courts "have looked to federal case law [interpreting Title VII of the Civil Rights Act of 1964] when considering claims of employment discrimination brought under the Ohio Revised Code." *Coryell v. Bank One Trust Co.*, 803 N.E.2d 781, 786 (Ohio 2004). Pursuant to this authority, " '[t]o prevail in an employment discrimination case, a plaintiff must prove discriminatory intent' and may establish such intent with either direct or indirect methods

4

of proof." *Morrissette v. DFS Servs., LLC*, No. 10AP-633, 2011 WL 1988373, at *3 (Ohio Ct. App. May 17, 2011) (citations omitted).

"Direct evidence of discrimination occurs when either the decision-maker or an employee who influenced the decision-maker made discriminatory comments related to the employment action in question." *Beekman v. Office Depot, Inc.,* No. 1:05CV0638, 2007 WL 1989600, at *3 (S.D. Ohio July 6, 2007). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (citations omitted). In other words, "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994)).

> W]hen a plaintiff seeks to establish age discrimination indirectly, the plaintiff may establish discriminatory intent using the analysis set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, as the Supreme Court of Ohio adopted it in *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 451 N.E.2d 807, and more recently modified it in *Coryell* […]. *Coryell* announced that, to establish a *prima facie* case of age discrimination in violation of R.C. 4112.14(A), a plaintiff-employee must demonstrate he or she "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Id.* at paragraph one of the syllabus, modifying and explaining *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, syllabus.

*Morrissette*, 2011 WL 1988373, at *3. The Sixth Circuit has held that "a plaintiff can also make out a prima facie case by showing, in addition to the first three elements, [*supra*] [,] that a 'comparable non-protected person was treated better.' " *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). The "ultimate inquiry in [an] age discrimination [case] […] [is] whether [a] plaintiff was discharged on account of age." *Coryell*, 803 N.E.2d at 788 (citation omitted).

5

Defendants assert that Franks has not alleged that either his termination or Mayor Hubble's repeated retirement inquiries were causally related to his age as opposed to his criticism of the Village administration. Further, Defendants argue that he has not plead sufficient facts to show that he was treated differently than similarly situated employees of the Village or that age was a factor in each element of a *prima facie* case of age discrimination.

On a motion to dismiss a claim of employment discrimination, however, arguments based upon the *McDonnell Douglas prima facie* case standard, outlined above, are premature. *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009). "The prima face case under Mc*Donnell Douglas* […] is an evidentiary standard, not a pleading requirement." *Id.* (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510 (2002)). *See also*, *Coryell*, 803 N.E.2d at 788-89 (adopting holding in *Swierkiewicz*). "Thus, 'the ordinary rules for assessing the sufficiency of a complaint apply.' " *Id*. (quoting *Swierkiewicz*, 534 U.S. at 511). *See also, Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007) (noting *Swierkiewicz's* holding that "an employment-discrimination plaintiff satisfies her pleading burden by drafting a short and plain statement of the claim consistent with Federal Rule of Civil Procedure 8(a).") (internal quotation marks omitted).[2] The Court, therefore, looks to see whether Franks has sufficiently pled "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Here, the complaint contains sufficient facts to support the first three elements of a prima *facie* case of age discrimination. Franks' complaint alleges he was 65 years old when Defendants involuntarily terminated him from his employment on or about February 21, 2011. (Compl. ¶¶ 7, 21.) He alleges he was employed as the Water and Street superintendent for the Village for over 30 years and was consistently reappointed to this position on a yearly basis.

---

[2] The lower courts in this circuit have grappled with whether the holding of *Swierkiewicz* remains good law in light of *Twombly* and *Iqbal*.

(Compl. ¶¶ 8-9.) It can plausibly be inferred from the facts plead that Franks was qualified for the position he held. Franks complaint alleges that the Village council members discriminated against him because he was an "older, long-term employee at the high end of the pay scale on the verge of retirement with benefits and payments due," and that the Mayor "relentlessly badgered" him to retire because she did not think he was "capable" of carrying out her "big plans for 2011." (Compl. ¶¶ 53, 28-29.) The complaint does not, however, contain any facts to support the fourth element of a *prima facie* case —— that Franks was replaced by a substantially younger person or that non-protected, similarly situated employees were treated better.

Nonetheless, the Court concludes this failure is not fatal to Franks' case at this stage of the litigation. As outlined above, at the pleading stage, Franks is not required to plead facts establishing a *prima facie* case. *Swierkiewicz,* 534 U.S. at 510. This is because the *McDonnell Douglas* framework does not apply in every employment discrimination case. "For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all elements of a *prima facie* case." *Id.* at 511 (citation omitted). The Court finds that Franks' complaint plausibly states a claim for age discrimination based on direct evidence.

According to Franks, he had several encounters with Mayor Hubble that constitute direct evidence of age discrimination. He states that Hubble had: (1) "repeatedly and relentlessly badgered [him] to retire" (Compl. at ¶ 28); (2) "told [him] on numerous occasions that she was the 'ultimate boss' and could fire him if she desired to do so" (Compl. at ¶ 25); (3) "told [him] that he could go work 'on a farm'" (Compl. at ¶ 26); and (4) had "told [him] that she would throw a big party if he would leave his job" (Compl. at ¶ 27). The complaint notes that Franks' termination occurred within a short temporal proximity to his planned retirement. (Compl. ¶ 53.) Franks further alleges that the Mayor "conveyed these messages knowing full

7

well that the [he] was on the verge of retirement." (Doc. 8 at 5.) Franks argues that a reasonable inference of age discrimination can be drawn from these statements and their temporal proximity to his expected retirement.

The Sixth Circuit has held that vague, isolated comments are not evidence of discriminatory intent. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247-48 (6th Cir. 1997) (isolated inquiries by the defendant's president about when the plaintiff intended to retire were not evidence that the plaintiff was terminated because of his age); *Gagne v. Nw. Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989) (noting that statement by the plaintiff's supervisor that the defendant needed "new blood" was not sufficient to raise a genuine issue of material fact on the plaintiff's age discrimination claim). Likewise, it has been held that the terms "retire" and "age" are not synonyms. *Cf. Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) ("[A]n employee's age is analytically distinct from his years of service."); *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 725 (8th Cir. 2001) ("Length of tenure, although it may correlate empirically with age, is not synonymous with age, and therefore the comment, "Twenty years is too long. You should have moved five years ago," is not direct evidence of age-based animus.")

Nevertheless, repeated inquiries about a plaintiff's intention to retire could suggest an age-related impetus for his eventual firing. *Leonard v. Twin Towers*, 6 F. App'x 223, 230 (6th Cir. 2001). In *Leonard*, an unpublished opinion, the Sixth Circuit held that, while an employer's friendly inquiries about an employee's intentions regarding retirement cannot form the basis of an age discrimination claim, "not all inquiries about retirement are 'friendly' " and "repeated and unwelcome inquiries may certainly be relevant to a showing of age discrimination." *Id.*

8

Further, the courts have held that an employer's statements, can amount to direct evidence of age discrimination if a plaintiff can show that the defendant used the term "retire" as a "proxy for age" to express or accomplish age discrimination. *See, Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (holding that evidence that employer frequently used innocuous terms to refer to an older worker in a disparaging way constitutes direct evidence of age discrimination); *Erickson*, 271 F.3d at 725 (references to employee's length of tenure not direct evidence of age discrimination absent evidence that employer was using length of tenure as a proxy to accomplish age discrimination). "This is because no factual inference of discrimination need be drawn from [such] statement[s], only a translation need be applied," i.e., 'you should retire' means 'you're too old.' *Scott*, 182 F. App'x at 526; *Erickson*, 271 F.3d at 725.

So long as Franks can come forward with evidence that defendants used "retirement" as a proxy for "age," the retirement-related comments alleged in the complaint may plausibly support a claim of age discrimination based on direct evidence. Of course, should Franks fail to produce such direct evidence, he will need to meet the *prima facie* elements outlined above to sustain his claim, in which case, if he does not, this suit may be subject to summary dismissal upon motion by defendants. Having concluded that the complaint, construed in a light most favorable to plaintiff, contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, the Court **DENIES** Defendants' motion for judgment on Count 1 of the complaint.

   **B. Count 3**

In Count 3, Franks alleges the Village breached its employment contract with him. Franks alleges that although there was no express, written contract between the Village and himself, there was an implied agreement based on his "circumstances and length of employment

9

at the Township." (Doc. 8 at 6.) Since the Village failed to appoint or dismiss him, Franks argues that it impliedly re-appointed him as Superintendent. (*Id*.)

In Ohio, municipal corporations cannot be sued in quasi-contract. *Cuyahoga Cnty. Hosp. v. City of Cleveland*, 472 N.E.2d 757 (Ohio Ct. App. 1984). A village is a municipal corporation that cannot be bound by a contract "unless the agreement is formally ratified through proper channels. As a result, a claim may not be sustained against a municipal corporation upon theories of implied or quasi-contract. Only express agreements adopted by the City in accordance with law may be enforced." *Wright v. Dayton*, 814 N.E.2d 514, 520 (Ohio Ct. App. 2004) (internal citations omitted). *See also Magnum Towing & Recovery, LLC v. City of Toledo*, 430 F. Supp. 2d 689 (N.D. Ohio 2006). Franks admits that his agreement with the Village was not an express written agreement. Ohio law is clear that a municipal corporation, such as the Village, cannot be held liable upon an implied contract theory. Accordingly, Franks' breach of contract claim must be dismissed; therefore, defendants' motion for judgment on Count 3 is **GRANTED**.

C.  Count 4

In Count 4, Franks alleges abuse of power by Mayor Hubble in violation of Ohio Rev. Code § 124.61. Hubble maintain that there is no private right of action provided by § 124.61. Franks disagrees, arguing that, since there is no language in that section expressly prohibiting an individual from bringing a private cause of action, Hubble's contention is unsupported.

Ohio Rev. Code §124.61 provides that: "No person who holds any public office […] shall […] by means of threats or coercion, induce or seek to induce anyone in the classified service to resign his position or to waive his right to certification, appointment, or promotion."

R.C. § 124.61. Although R.C. § 124.61, admittedly, does not expressly prohibit private rights of action, R.C. § 124.64, the enforcement provision, states that:

> Prosecutions for the violation of sections 124.01 to 124.64 of the Revised Code [...] shall be instituted by the attorney general or by the director acting through special counsel, or by the county prosecutor for the county in which the offense is alleged to have been committed. [...]

R.C. § 124.64.

According to the plain language of § 124.64, an action against a public official, such as Hubble, for violation of Ohio's civil service laws Ohio Rev. Code § 124.01 et seq. must be instituted by the attorney general, the Director of Administrative Services, acting through special counsel, or by the county prosecutor, of which Franks is none. "[W]here the text of a statute is clear and unambiguous, the Court should not read in additional requirements or interpretations that are not supported by that clear text." *Satterfield v. Karnes*, 736 F. Supp. 2d 1138, 1155 (S.D. Ohio 2010) (citing *Chrysler Corp. v. Comm'r*, 436 F.3d 644, 654 (6th Cir. 2006)). The Court will not read beyond the plain language of the statue to arrive at the conclusion that Franks may bring this claim. As Franks lacks standing to bring a claim against Hubble under R.C. § 124.61, the Court **GRANTS** Defendants' motion for judgment on the pleadings as to Count 4.

### D. Count 5

In Count 5 of his complaint, Franks alleges intentional infliction of emotional distress by Defendants. (Compl. at ¶¶ 83-89.) Defendants seek dismissal of this claim as against the Village and Hubble in her official capacity. Defendants maintain that they are immune from this claim pursuant to the general immunity extended to political subdivisions and their employees in Ohio Rev. Code § 2744.02(A)(1). Further, defendants argue that Ohio case law

11

holds that that there can be no intentional infliction of emotional distress arising out of an employment relationship with a political subdivision.

The Ohio Supreme Court has defined the tort of intentional infliction of emotional distress as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager v. Local Union 20*, 453 N.E.2d 666 (1983), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2001) (quoting Restatement (Second) of Torts 71 § 46 (1) (1965)). The Court went on to state that "'[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting Restatement (Second) of Torts 71 § 46 cmt. d (1965)).

Ohio Rev. Code § 2744.02(A)(1) provides general immunity for political subdivisions and their employees from liability in tort "allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1).[3] Absent that immunity, a political subdivision would be liable in tort, just like any other entity.

Franks argues that § 2744.09(B) provides an exception to Defendants' immunity from tort liability in this case. Ohio Rev. Code § 2744.09 provides that immunity from tort liability

> does not apply to, and shall not be construed to apply to […] Civil actions by an employee […] against his political subdivision relative to *any matter that arises*

---

[3] The Court notes that this statutory provision has been held by the United States District Court for the Southern District of Ohio to violate the Ohio constitution because it would violate the right to trial by a jury as well as the right to a remedy. *Kammeyer v. City of Sharonville*, 311 F. Supp. 2d 653 (S.D. Ohio 2003). The Ohio Supreme Court has not spoken on this question.

12

> *out of the employment relationship between the employee and the political subdivision*[.]

Ohio Rev. Code § 2744.09(B) (emphasis added). Franks asserts that, because he is an employee of a political subdivision bringing a civil action against a political subdivision that arises out of an employment relationship between the parties, his tort claim for intentional infliction of emotional distress should not be barred.

Defendants, on the other hand, argue that while § 2744.09(B) expressly applies to civil actions brought by an employee against a political subdivision, Ohio case law holds that this exception does not apply to intentional tort claims filed by an employee. (Doc. 9 at 7.) This is so, according to defendants, because such claims must necessarily arise outside of the employment context. *See Brady v. Safety-Kleen Corp.*, 576 N.E.2d 722 (Ohio 1991).

According to the Ohio Supreme Court, "[t]here are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress […]." *Wilson v. Stark Cnty. Dept. of Human Servs.*, 639 N.E.2d 105, 107 (Ohio 1992). Further, the Ohio courts have repeatedly held that intentional torts are not included in the Ohio Rev. Code § 2744.09(B)'s exception to immunity because such intentional torts cannot properly be said to arise from an employment relationship. *See, e.g., Sabulsky v. Trumbull Cnty.*, No. 2001-T-0084, 2002 WL 31886686 at *3 (Ohio Ct. App. Dec. 27, 2002); *Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 702 (N.D. Ohio 2005). Defendants, however, have notified the Court that a split exists among the Ohio Courts of Appeals with respect to whether § 2744.09(B) applies to intentional tort claims brought by an employee, and whether intentional torts can arise out of the employment relationship. In a footnote in their motion, Defendants have informed the Court that the Ohio Supreme Court will be taking up the issue in the near future. (Doc. 9 at 7 n. 2) (citing *Sampson v. Cuyahoga Metro. Hous. Auth.*, No. 2010-1561 (Ohio Sup. Ct.)).

13

In an abundance of caution, and given the fact that the Ohio Supreme Court is taking up the issue of intentional torts in an employment context as it pertains to § 2744.09(B), the Court declines to rule on this prong of Defendants' motion at this time. Instead, since other claims in the case will now proceed, the Court prefers to await a ruling on the issue by the Ohio Supreme Court. Thus, at this time, the Court **DENIES** Defendants' motion with respect to Count 5 without prejudice to renewal at a later time, if appropriate.

### E. Punitive Damages

Franks, in his Complaint, seeks to recover both compensatory and punitive damages against Defendants. (Compl. at 12.) Ohio Rev. Code § 2744.05 provides that "in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function: (A) Punitive or exemplary damages shall not be awarded." R.C. § 2744.05(A). Defendants have moved to dismiss Franks' claim for punitive damages as against the Village and Hubble in her official capacity.

The Supreme Court in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), has also made clear that liability against a municipality does not extend to liability for punitive damages. The Court explained that punitive damages enforced against a municipality are "in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." *Id.* at 267. The Court finds *City of Newport* controlling. Accordingly, Franks is not entitled to punitive damages as against the Village and Mayor Hubble in her official capacity for any of his claims. Consequently, Defendants' motion for judgment on

plaintiff's claim for punitive damages against the Village and Hubble in her official capacity is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** Defendants' motion for partial judgment on the pleadings, and **DISMISSES** Counts III and IV of the complaint, as well as Plaintiff's claim for punitive damages as against the Village and Hubble in her official capacity. The Court **DENIES** Defendants' motion for judgment on Count I and **DENIES without prejudice** to refiling, Defendants' motion with respect to Count V.

**IT IS SO ORDERED**.

Dated: November 18, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**